# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

PEGGY LUNDINE,
on behalf of herself and other similarly situated,

       *Plaintiff,*

vs.

Case No. 18-1235-EFM

GATES CORPORATION,

       *Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant Gates Corporation's ("Gates") Motion to Strike Opt-In Plaintiff Hannah Arnold from the Conditional Class (Doc. 50). Gates argues that Arnold does not satisfy the putative class definition because she was hired through a temporary staffing agency. For the following reasons, the Court grants Gates' motion.

### I.     Factual and Procedural Background

Lundine filed this action on behalf of herself and others similarly situated to recover alleged unpaid overtime wages from Gates. The Court granted conditional class certification on July 11, 2019, defining the putative class as "[a]ll current and former nonexempt manufacturing employees who were employed by Gates from July 11th, 2016, to the present." On September 21, 2018, Hannah Arnold filed a consent to join this action.

Arnold worked at Gates' Siloam Springs, Arkansas facility for five weeks between September and October 2017. Gates hired her through a temporary staffing agency, 1st Employment Staffing (the "Staffing Agency"). Gates utilizes the Staffing Agency and other companies like it to temporarily fill its fluctuating employment needs. Gates hires only a small portion of its overall workforce through temporary staffing agencies. The workers hired by this method are commonly prescreened and paid by the agencies, and the agencies maintain their personnel files. Gates does not directly pay workers hired through temporary agencies. Rather, the agencies—including the Staffing Agency in this case—submit invoices to Gates which includes amounts for labor as well as administrative and overhead fees. Gates pays the agencies a lump sum for each invoice amount. The agencies then apportion Gates' payments to their workers according to the nature and duration of their work.

## II. Legal Standard

The FLSA permits legal action "against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."[1] Unlike class actions under Rule 23(b)(3) of the Federal Rules of Civil Procedure, a collective action brought under the FLSA includes only those similarly-situated individuals who opt into the class.[2] But the FLSA does not define what it means to be "similarly situated." Instead, the Tenth Circuit has approved an ad hoc approach to § 216(b) certification claims.[3] This approach employs a two-step

---

[1] 29 U.S.C. § 216(b).

[2] *See id.* (stating that employees must give written consent to become party plaintiffs).

[3] *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). Although *Thiessen* involved a collective action brought under the Age Discrimination in Employment Act ("ADEA"), the Tenth Circuit explicitly noted that the ADEA adopts the class action opt-in mechanism set out in section 216(b) of the FLSA. *Id.* at 1102. For that reason, *Thiessen* controls the analysis in this case. *See Peterson v. Mortg. Sources Corp.*, 2011 WL 3793963, at *4 n.12 (D. Kan. 2011).

analysis for determining whether putative opt-in plaintiffs are similarly situated to the named plaintiff.[4]

First, in the initial "notice stage," the court "determines whether a collective action should be certified for purposes of sending notice of the action to potential class members."[5] The notice stage "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."[6] The standard for conditional certification at the notice stage is lenient and typically results in certification to notify potential plaintiffs.[7]

The second step of the ad hoc approach occurs after discovery.[8] At this stage, the district court applies a stricter standard and reviews the following factors to determine whether the opt-in plaintiffs are similarly situated: (1) the disparate factual and employment conditions of the individual plaintiffs, (2) defenses available to the defendant that are individual to each plaintiff, and (3) other fairness and procedural conditions.[9] This second stage in the certification analysis is most often prompted by a motion for decertification.[10]

### III.  Analysis

---

[4] *Thiessen*, 267 F.3d at 1102-03.

[5] *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004).

[6] *Thiessen*, 267 F.3d at 1102 (quotations and citations omitted).

[7] *See, e.g., id.* at 1103; *Brown*, 222 F.R.D. at 681; *Pack v. Investools, Inc.*, 2011 WL 3651135, at *3 (D. Utah 2011); *Smith v. Pizza Hut, Inc.*, 2011 WL 2791331 (D. Colo. 2011); *Sloan v. Renzenberger*, 2011 WL 1457368, at *3 (D. Kan. 2011).

[8] *Thiessen*, 276 F.3d at 1102-03.

[9] *Id.*

[10] *Id.*

Gates argues that Opt-In Plaintiff Hannah Arnold falls outside of the conditional class definition because Gates never "employed" her, and she was only engaged for a short assignment through a staffing agency. Gates argues that temporary contract workers like Arnold do not meet the conditional class definition as having been "employed by Gates."

The FLSA defines an "employee" as "any individual employed by an employer" and "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."[11] The FLSA defines "employ" expansively to mean "suffer or permit to work."[12] This latter definition covers some parties who might not otherwise qualify as an employee under traditional agency law.[13] In determining whether an individual is an employee under the FLSA, "our inquiry is not limited by any contractual terminology or by traditional common law concepts of 'employee' or 'independent contractor.' "[14] "Instead, the economic realities of the relationship govern, and the focal point is whether the individual is economically dependent on the business to which he renders service . . . ."[15] Under the economic realities test, a court considers "whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records."[16] In applying the economic realities test, courts look at:

> (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to

---

[11] 29 U.S.C. § 203(e)(1), (d).

[12] 29 U.S.C. § 203(g); *see Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992).

[13] *Darden*, 503 U.S. at 326.

[14] *Henderson v. Inter–Chem Coal Co., Inc.,* 41 F.3d 567, 570 (10th Cir. 1994) (citing *Dole v. Snell,* 875 F.2d 802, 804 (10th Cir. 1989)).

[15] *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998) (citations and quotations omitted).

[16] *Id*. (citing *Watson v. Graves,* 909 F.2d 1549, 1553 (5th Cir. 1990)).

perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business.[17]

A court must consider the totality of the circumstances and no single factor is dispositive.[18]

Unlike the traditional focus of the economic realities test, which considers whether a worker is an employee or independent contractor, the issue here is whether Arnold is an employee of Gates or the Staffing Agency. The Court concludes that the nature of Arnold's relationship with Gates disfavors categorizing her as an employee of Gates. Gates does not hire or fire specific temporary workers but rather contracts with the Staffing Agency to fill its recurring labor shortages. While Gates generally sets its full-time and temporary workers' schedules, it does not dictate the conditions of employment concerning temporary workers hired through staffing agencies. Additionally, Gates does not determine the rate or method of payment for temporary workers. The Staffing Agency calculates the rates and methods of payment for its temporary workers and then sends Gates an invoice. Gates pays these invoices in lump sums, which the Staffing Agency then apportions to its workers, such as Arnold. Finally, Gates does not maintain the employment records of personnel hired through staffing agencies. In this case, the Staffing Agency maintained Arnold's employment records.

Similarly, the fourth factor weighs against categorizing Arnold as an employee of Gates since Arnold's employment was temporary rather than permanent. She worked for Gates for approximately five weeks specifically to fill a temporary shortage of labor. The Staffing Agency regularly fills Gates' temporary needs with workers such as Arnold. Gates periodically hires

---

[17] *Id.* at 1440-41 (citing *Henderson*, 41 F.3d at 570).

[18] *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 506 (10th Cir. 2012).

workers to fill its temporary labor shortages in this manner, and typically less than 10% of Gates' manufacturing workers are hired through temporary staffing agencies.

On the other hand, factors one through three—the degree of control exerted by Gates over Arnold, Arnold's opportunity for profit, and Arnold's investment in the business—favor Arnold's position. While she was working at Gates' Arkansas facility, Gates had significant control over her job duties and her position did not require her to exercise much discretion. Rather, Arnold performed her duties as carefully defined by Gates, similar to Gates' long-term manufacturing employees. Furthermore, if a worker has the opportunity for profit or loss, or an investment in the business, it is more likely that she is not an employee.[19] Since neither factor is present in this case, the analysis weighs in favor of classifying Arnold as an employee.

Factors five and six also weigh in favor of categorizing Arnold as an employee. Arnold's work as a manufacturing employee at Gates' Arkansas facility did not require any more special skills or training than that of Gates' long-term employees. Additionally, Arnold's work was an integral part of Gates' business, since she was acting in a manufacturing capacity—Gates' primary line of business.

Considering the totality of the circumstances, the Court concludes that Arnold is not an employee of Gates for purposes of this FLSA collective action. Although some factors weigh in favor of categorizing Arnold as an employee, the unique business relationship between Gates and the Staffing Agency indicates that Gates did not employ Arnold in either the traditional or FLSA sense of the word. Lundine filed this action on behalf of herself and others similarly situated to recover alleged unpaid overtime wages from Gates. But Gates does not pay wages to workers

---

[19] *Baker,* 137 F.3d at 1441-42.

placed at its facilities through the Staffing Agency.  Rather, Gates pays the Staffing Agency a lump sum based on invoices calculated by the Staffing Agency, which includes, among other things, amounts eventually directed to temporary workers.  For that reason and the others listed above, Arnold and other similarly situated temporary workers do not satisfy the putative class definition in this case.

**IT IS THEREFORE ORDERED** that Defendant Gates Corporation's Motion to Strike Opt-In Plaintiff Hannah Arnold from the Conditional Class (Doc. 50) is **GRANTED.**

**IT IS SO ORDERED.**

Dated this 14th day of April, 2020.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE