# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | | |
|---|---|---|
| **PEGGY LYNN LUNDINE** *on behalf of herself and others similarly situated*, <br><br>　　　　Plaintiff, <br><br>vs. <br><br>**GATES CORPORATION**, <br><br>　　　　Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No.:  6:18-cv-1235 |

## MEMORANDUM IN SUPPORT OF JOINT MOTION FOR APPROVAL OF STIPULATION OF SETTLEMENT AGREEMENT AND RELEASE FOR COLLECTIVE ACTION

Named Plaintiff Peggy Lundine ("Named Plaintiff"), on behalf of herself and the Opt-In Plaintiffs described below (the "Collective Class Members"), and Defendant Gates Corporation ("Defendant" or "Gates")[1] hereby submit this Joint Motion for Approval of the Parties' Stipulation of Settlement Agreement and Release (the "Stipulation") (the "Motion").  The Motion requests that the Court issue an Order granting approval of the Parties' Stipulation of Settlement Agreement and Release (hereafter, the "Settlement Agreement") (attached hereto as **Exhibit A**) and authorizing the Parties to implement the procedures required under the Settlement Agreement.  The Court should grant the Motion and issue the proposed Order because the Settlement Agreement is fair, reasonable, and the product of arm's length negotiations.

---

[1] Named Plaintiff, the Collective Class Members, and Defendant shall collectively be referred to as the "Parties" and each, individually, a "Party."

## I. PROCEDURAL BACKGROUND

Named Plaintiff filed a Complaint on August 21, 2018 against the Defendant alleging that Defendant violated the Fair Labor Standards Act (the "<u>FLSA</u>"), 29 U.S.C. §§ 201 *et. seq.*, by failing to pay her and other hourly manufacturing employees overtime pay for work performed "off the clock" while employed at Defendant's plants located in numerous states. The Complaint also alleged that Defendant violated the Kansas Wage Payment Act, Kan. Stat. § 44-313, *et seq.* ("KWPA"), by failing to pay her and other hourly manufacturing employees overtime pay for work performed "off the clock" while employed at Defendant's Iola, Kansas plant.

The Defendant denies that it owes any unpaid wages or overtime compensation to Named Plaintiff, the Collective Class Members, or any other persons; denies that the Collective Class Members are similarly situated; denies that it has violated the FLSA, KWPA or any other law, rule or regulation relating to the payment of compensation; and maintains that it has at all times properly compensated the Named Plaintiff, the Collective Class Members, and all other persons.

The Named Plaintiff and Defendant have exchanged initial factual disclosures, conducted initial discovery, voluminous discovery questionnaires, and Plaintiffs engaged an expert to review timekeeping and pay data and prepare a damages report. This discovery has enabled each Party to understand and assess the detail and substance of their respective claims and defenses. A bona fide dispute exists between the Parties as to the amount, if any, of wages and overtime compensation owing to the Named Plaintiff and Collective Class Members.

On October 25, 2019, after receiving conditional class certification under the FLSA, the Named Plaintiff, with the Court's approval, sent a Notice of this Civil Action and Consent Forms to 4,432 persons that were deemed the collective class as certified by the Court in its July 11, 2019 Order. By the deadline for returning the Consent Forms, 247 forms were returned. However, due to failures to timely respond to discovery questionnaires and others who had no

damages within the applicable FLSA or KWPA's statute of limitations, 126 individuals were dismissed with prejudice by this Court. Therefore, the Parties agree that there are 112 opt-in Plaintiffs (including Named Plaintiff) who make up the Collective Class Members. On or about February 1, 2021, the Parties were able to reach agreement on the material terms of a settlement.

## II. FACTUAL BACKGROUND

**A.     The Litigation and The Settlement Discussions**

The Parties have conducted a thorough investigation into the facts and have extensively analyzed the issues in this action. Collective Class Counsel diligently pursued an investigation of the Collective Class Members' claims against Gates. Gates produced personnel-related records, payroll records and timekeeping data for the Collective Class Members. Gates also produced copies of documents concerning Company policies and procedures related to all aspects of timekeeping, compensation, and training, as well as e-mails. Plaintiff produced sworn declarations of the Collective Class Members and numerous completed questionnaires. Gates produced sworn declarations of similarly situated manufacturing employees, employed at each of the facilities at issue in this Action. The Parties examined the documents concerning the employment policies and procedures related to the allegations, reviewed human resources files, and reviewed payroll and timekeeping data of all Collective Class Members. Plaintiff engaged a statistical and pay data expert, who analyzed the data and issued reports regarding the Collective Class Members' allegations of off-the-clock work and potential damages. Plaintiff provided those findings to Gates, which responded in detail to the alleged damages with specific counterpoints and provided its own analysis of the Collective Class Members' payroll and timekeeping data.

As a result, the Parties understand the detail and substance of their respective claims and defenses. *Bona fide* disputes exist between the Parties as to whether the Collective Class

Members worked any time for which they were not properly compensated and, if so, how much time they claimed to have worked without proper compensation and whether that time was *de minimis*. Gates further disputes that the case is appropriate for collective action treatment and intends to move to decertify conditional class certification in the future if the case does not resolve. The Parties recognize the substantial risks that each side faces with proceeding through the decertification phase, trial and prevailing on the merits of their claims. In addition, the Parties would further incur substantial costs to continue litigation including numerous depositions and motion practice. Ultimately, the Parties have agreed to settle this dispute, subject to the terms and conditions set forth in the Settlement Agreement attached to this Motion.

## 1. The Settlement Payments

Under the Settlement Agreement, Gates will pay $166,035.09 to settle this action (the "Settlement Fund"). (Settlement Agreement, attached as Ex. A, at §1.20). The Settlement Fund is the total amount of settlement money to be paid by Gates and set aside to pay Named Plaintiff, the Collective Class Members, Collective Class Counsel for fees and expenses, applicable federal, state, local and/or payroll taxes. (*Id*.) Each Collective Class Member who does not timely and properly opt-out of the Settlement pursuant to the procedures set forth in the Agreement, will receive a pro rata distribution of the Net Settlement Fund, as defined and calculated pursuant to the Settlement Agreement, reflected in Exhibit C.

Each Collective Class Member shall be paid a pro-rata portion of the Net Settlement Fund based on the overtime compensation allegedly due to the Collective Class Member, as determined by their expert witness, Dr. Liesl Fox, PhD, and adopted by Gates as the offer of settlement to each Collective Class Member. (Settlement Agreement, Ex. A, § 4.1) In determining the amount of compensation allegedly due to each of the Collective Class Members, Dr. Fox: analyzed the payroll data provided by Gates for each Collective Class Member and the

average number of hours each Collective Class Member reported working each workweek; determined whether the compensation paid based on weekly compensation met the overtime pay allegedly due to each Collective Class Member. This calculation is tied to the Collective Class Member's specific allegations made to Class Counsel and based on the actual weeks worked during the relevant time period according to the individual's payroll and earnings data. The Net Settlement Fund available for distribution to the Collective Class Members and for the Named Plaintiff Enhancement Payment equals or exceeds $93,114.56. (Settlement Agreement, attached as Ex. A, at §1.12). Under the Plan of Allocation, the average amount of the Pro Rata Distributions to be made to the Collective Class Members is $831.38.

The settlement checks for the Pro Rata Distribution and Named Plaintiff's service award will be mailed to the Named Plaintiff and Collective Class Members (who have not timely and properly opted-out of the Settlement) within 45 days after Defendant receives, from Collective Class Counsel, the last known mailing addresses, executed Claim and Release Forms, and a copy of Exhibit C reflecting the gross payout from the Net Settlement Fund for each Collective Class Member, as set forth in the Collective Action Settlement Notice and Claim and Release Form. (Settlement Agreement, §1.14) The settlement checks will be valid for 120 days. The face of each check, or bolded language of a notice enclosed with each check, shall clearly state that the check must be negotiated within one-hundred and twenty (120) calendar days. Between sixty (60) and ninety (90) days after the settlement checks have been mailed, and in connection with its month-end reconciliation process, Gates will provide Collective Class Counsel with the names of any individuals who have not yet cashed or otherwise negotiated their checks. Collective Class Counsel will make reasonable efforts to locate and contact such individuals who

have not negotiated checks issued to them reminding them of the approaching 120-day deadline. (Settlement Agreement, at § 6.1).

The released claims are further explained in the Settlement Agreement. However, Class Members will not be providing a general release of all claims in exchange for the settlement payments. The claims of any Collective Class Member who signs, endorses, cashes, deposits or otherwise negotiates any settlement check will be deemed to have released the Released Claims. (*Id*. at §7.1-7.2) Collective Class Members who do not return a claim form will still be sent their settlement checks, and if they sign, collect, cash, deposit or otherwise negotiate their settlement checks within the 120-day period will release the Released Claims. To the extent that any Collective Class Member declines the opportunity to participate in the Settlement or to sign, collect, cash, deposit or otherwise negotiate any settlement checks, the portion of the Settlement Fund allocated shall revert to Defendant and they shall not be deemed to have released any of the Released Claims. (Settlement Agreement, § 6.6).

Class Counsel seeks payment for attorneys' fees of $49,810.53, which is 30% of the Settlement Fund. (Settlement Agreement, at §4.2). Plaintiffs' counsel also seeks reimbursement of $21,110 for costs and expenses necessarily incurred for this litigation. (*Id.*). For her service to the Collective Class Members and in recognition of the benefit she created for the Collective Class Members, the Named Plaintiff will receive a service payment in the amount of $2,000. (*Id.*, at § 4.2). This amount is in addition to any pro rata payment made to Named Plaintiff. The basis for the requests made in this paragraph are set forth in a separate Unopposed Motion before this Court.

2.   **Procedure**

The Named Plaintiff has signed the Settlement Agreement. Pursuant to the Settlement Agreement, within 14 days after the Court issues an order granting approval of the Settlement

Agreement, the Plaintiff will send to each Collective Class Member a Notice, attached to the Settlement Agreement as Exhibit B.  (Settlement Agreement, §5.1).  The Notice will provide their respective gross settlement payment, explain how each Collective Class Member's Pro Rata Distribution will be calculated, describe all fees and costs requested by Class Counsel, include instructions on how to participate in the Settlement or, alternatively, how to opt-out of the Settlement.  The Notice will further explain that if said person participates in the settlement that they will be releasing the "Released Claims" as defined in the Agreement.  (*Id*. at §§ 5.2, 7.2)

To participate in the Settlement, a Collective Class Member must sign and return the Claim and Release Form included in the Notice within forty-five (45) days.  If a Collective Class Member wants to be excluded from the Settlement, he or she will have forty-five (45) days from the mailing of the Notice to exclude themselves from the Settlement.  (*Id.* at §§ 6.1, 6.4) Collective Class Members who return a Claim and Release Form indicating their desire to not participate in the Settlement will be deemed to have waived irrevocably any right in or claim to settlement funds but will not be deemed to have waived their right to assert any of the Released Claims against any of the Released Parties in a separate legal proceeding if they so choose.  (*Id*.)

### III. THE COURT SHOULD GRANT APPROVAL OF THE SETTLEMENT AGREEMENT BECAUSE THE PROPOSED SETTLEMENT REFLECTS A REASONABLE COMPROMISE OF THE PARTIES' CLAIMS AND DEFENSES

Settlements under the FLSA require court approval, because private settlements under the FLSA will not effectuate a valid release.  *Stalnaker v. Novar Corp.,* 293 F.Supp.2d 1260, 1262 (M.D. Ala. 2003) (*citing Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697 (1945)); *see also Lynn's Food Stores v. U.S.,* 679 F.2d 1350, 1354 (11th Cir. 1982). Accordingly, wage claims arising under the FLSA are typically settled or compromised in one of two ways. First, under Section 216(c) of the Act, the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them.  An employee who accepts such a payment thereby

waives his right to bring suit for both the unpaid wages and for liquidated damages. *Lynn's Food Stores,* 679 F.2d at 1353. Second, pursuant to a private enforcement action under § 216(b) of the Act, the District Court may approve a settlement reached as a result of contested litigation to resolve a bona fide dispute between the Parties over FLSA coverage. *Id.* When the latter option is proposed, as it is here, the court may enter a stipulated judgment "after scrutinizing the settlement for fairness." *Id.* (*citing Schulte, Inc. v. Gangi,* 328 U.S. 108 (1946)).

Therefore, the Court's inquiry as to the fairness of an FLSA settlement arising from a private enforcement action is two-staged. First, the court must be satisfied that the settlement was the product of "contested litigation." Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute between the Parties over FLSA coverage. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Id.* at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* Where, as in this case, the record is complete with all material facts and terms relating to the Settlement of this matter, a fairness hearing is unnecessary. *See Smith v. Solan Trucking & Excavating, Inc.,* Case No. 6:08-cv-1044-orl-19DAB, 2008 U.S. Dist. LEXIS 100899 at *1, fn.1 (Dec. 3, 2008 M.D. Fla.) ("As the papers set forth all essential terms, no fairness hearing was necessary."); *Chappetto v. Condominium Concepts Management, Inc.,* Case No. 6:08-cv-924-Orl-19DAB, 2008 U.S. Dist. LEXIS 61778 *1 fn. 1 (July 30, 2008 M.D. FLA) (where the terms of the FLSA settlement are fully disclosed to the court, no fairness hearing is necessary); *see also Amador v. Healthy Howard, Inc.*, 2015 U.S. Dist. LEXIS 86378 (D. Md. July 2, 2015). This Court should readily conclude that this Settlement is also a reasonable resolution of a bona fide dispute in contested litigation.

**A.     The Proposed Settlement is the Product of Contested Litigation.**

The proposed settlement is undeniably the product of contested litigation. In her Complaint, Plaintiff made detailed factual allegations describing Gates' allegedly non-compliant compensation practices. Defendant filed its Answer, which denied all of Plaintiff's material factual allegations, and asserted an array of defenses, some of which they argued would bar Plaintiff's claims in whole or in part.

As explained above, the Parties conducted extensive factual investigations regarding the issues raised in Plaintiff's Complaint. This was accomplished by thoroughly interviewing the Plaintiff and the Collective Class Members and reviewing the documentation that they had available to them; by obtaining the relevant pay Policies and Procedures of Gates, e-mails, and pay data; and by analyzing the sworn declarations and questionnaires of the Plaintiff, all Collective Class Members, and from Gates' management. Plaintiff extensively analyzed all of the Collective Class Members' payroll data and computed damage estimates. Gates also conducted a thorough investigation of the facts and calculated hypothetical damages scenarios. In addition to their factual investigations, the Parties also undertook legal analysis of the various issues implicated in this case. This included analysis of the merits of Plaintiff's claims and of Gates' defenses and by conducting extensive analysis of both the FLSA case law regarding decertification of similar cases and determination of the potential damages available.

The settlement of this lawsuit resulted only after arms length negotiations, significant and time-consuming data analysis, thorough factual investigation, extensive legal analysis, and discussions with opposing counsel regarding the proper settlement structure and process, the damage formulas, and legal positions. Prior to the settlement, the Parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in this case and to express and defend their positions to both

experienced counsel and a knowledgeable and respected mediator with extensive experience in wage and hour law. Accordingly, the Parties respectfully state that the Court should easily conclude that the proposed settlement was the product of contested litigation.

**B.     The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties.**

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a *bona fide* dispute between the Parties over FLSA coverage. The second issue involves a review of the fairness and reasonableness of the proposed settlement. As explained below, the Parties respectfully suggest that the Court should conclude that both issues contemplated by this second prong of the settlement approval inquiry are satisfied.

**1.     A *Bona Fide* Dispute Exists Between the Parties**

Plaintiff alleged that Gates' managers directed Collective Class Members not to report or record all time worked.  Specifically, Plaintiff asserted that she and the Collective Class Members worked weekly hours over 40 for which they were not paid.  The Plaintiff further alleged that such failures to properly compensate her and Collective Class Members were willful and therefore, entitled them to recovery for an entire three-year limitations period and that Gates could prove no facts in support of any claim that liquidated damages should not be paid to the Plaintiff and the Collective Class Members.

Gates denied Plaintiff's allegations. Specifically, Gates showed that it maintained and distributed policies regarding complete and proper timekeeping and payment to Plaintiff and the Collective Class Members. Gates also showed that it trained and educated Plaintiff and Collective Class Members on those policies and they affirmed their understanding of its policies to record and report all time worked.  Gates' payroll data also showed instances where Collective

Class Members in fact recorded and received overtime pay.  Gates also asserted that certain claims as to the dates and times Collective Class Members allegedly worked overtime without pay, were, as a practical matter, impossible.  Gates also denied that liquidated damages or a three-year statute of limitations was appropriate. Gates also challenged that the Collective Class was "similarly situated" for final certification.

If Plaintiff's allegations were all ultimately correct, Gates would be faced with the prospect of a significant monetary verdict in favor of the Collective Class Members and the litigation fees and costs of Class Counsel, as well as Gates' own litigation fees and costs.  If Gates' arguments were correct, then Plaintiff and the Collective Class Members faced decertification, a potential dismissal of their claims and no recovery of any kind.  Accordingly, the Parties respectfully state that the Court should readily conclude that a *bona fide* dispute between the Parties exists over the claims.

### 2. The Proposed Settlement is Fair and Reasonable

This settlement was the product of well-informed, arms' length negotiations by experienced counsel on both sides.  Specifically, both Parties performed extensive analysis of damages, pertinent documentation and the facts and law applicable to the case. Substantial and lengthy settlement discussions were held before the Parties finally bridged the gap between the Parties' settlement positions and obtained the resolution described herein.  At every point in the litigation, the Parties' counsel vigorously defended their clients' position while assessing the risks of continued litigation, such as the fact that a court may decertify the action, a fact finder could determine the facts were in either sides' favor subjecting each Party to significant risks if the case was not found in their favor. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354 (recognizing that courts rely on the adversarial nature of a litigated FLSA case resulting in

settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litigation,* 210 F.R.D. 694, 700 (E.D.Mo. 2002) (stating "[i]n evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery."). In this matter, the Collective Class Members are receiving close to 50% of their best-case scenario for overtime owed as reflected in Dr. Fox's report. In *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010), the court found that settling a case for one-third of alleged wages owed was "exceptional." Given the risk of loss, and time value of money, this percentage of payment to each class member is significant.

Moreover, consideration of several additional relevant factors confirms that the proposed settlement is fair and reasonable.

### a.     *Public Policy Favors Settlement*

Public policy favors settlements. This is especially true in complex cases, such as this, where significant resources can be conserved by avoiding the time, cost and rigor of protracted litigation. *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354 (recognizing policy of encouraging settlement of FLSA litigation); *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1149 (8th Cir. 1999) (stating "[a] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). Despite the complicated nature of the case, the Parties were able to get the matter resolved without additional protracted litigation.

    b.  *Substantial Obstacles Existed if the Litigation Continued, and the Settlement Offers Substantial, Immediate Relief*

As outlined above, the Parties disagree about the merits of Plaintiff's claims and the viability of Gates' various defenses. If the litigation had continued, Plaintiff would have faced many obstacles, including a decertification motion, motions for summary judgment, possible *Daubert* motions, and eventually a lengthy, complex and costly jury trial and possible appeals. Furthermore, even if Plaintiff prevailed on the issue of liability, Plaintiff faced obstacles in proving the fact and amount of damages suffered by Plaintiff and the Collective Class Members.

Without question, the proposed settlement brings substantial value to the claims of the Collective Class Members - all of whom granted Named Plaintiff the authority to settle the case on their behalf. Although the range of potential recovery at trial would possibly have been greater, it is equally likely the potential recovery would have been less. Consequently, this settlement brings value now, as opposed to years from now, and provides a certainty of result. The substantial benefits that will be made immediately available is a significant factor weighing in favor of the Court's approval of the proposed settlement. *See In re BankAmerica,* 210 F.R.D. at 701 (stating "[a]s courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush." (internal quotations omitted)).

    c.  *Counsel and the Named Plaintiff Support the Settlement*

Class Counsel and Defense Counsel have gained substantial knowledge of the facts and legal issues relating to the respective claims and defenses and have ample evidence on which to base an informed assessment of the proposed settlement. Again, all Counsel did a significant and

13

extensive analysis of the claims, facts, and the voluminous payroll records. Based on their knowledge of the case and the applicable law, as well as their experience in similar FLSA actions, undersigned Counsel for each Party believes the settlement is fair, reasonable and adequate. "Although the Court is not bound by the counsel's opinion, their opinion is nonetheless entitled to great weight." *In re BankAmerica,* 210 F.R.D. at 702. Additionally, the Named Plaintiff has executed the Settlement Agreement indicating her approval of the settlement. In consenting to join this matter, all Collective Class Members gave Ms. Lundine the authority to do so with the advice of Class Counsel. Accordingly, this Court should conclude that the proposed settlement reflects a fair and reasonable resolution of a bona fide dispute and approve the settlement.

## IV. CONCLUSION

This FLSA Collective Action Settlement was reached as the result of contested litigation and resolves a *bona fide* dispute between the Parties over FLSA claims. The settlement is extremely fair, reasonable and adequate, and provides the Collective Class Members the opportunity for meaningful monetary recovery to resolve disputed wage claims. For these reasons, and those more fully set forth above and in the attached exhibits, the Court should approve the Settlement Agreement, allow notice to be sent to the Collective Class Members, and otherwise grant the Joint Motion for Approval of Stipulation of Settlement and Release Agreement.

Respectfully Submitted,



/s/ Brendan J. Donelon
Brendan J. Donelon, KS 17420
4600 Madison, Suite 810
Kansas City, Missouri 64112
Tel:    (816) 221-7100
Fax:    (816) 709-1044
brendan@donelonpc.com

ATTORNEYS FOR PLAINTIFF

-and-

David L. Heinemann
Christopher S. Shank
SHANK & HEINEMANN, LLC
1968 Shawnee Mission Parkway, Suite 100
Mission Woods, KS 66205
Telephone: 816.471.0909
Facsimile: 816.471.3888
davidh@shanklawfirm.com
chris@shanklawfirm.com

Attorneys for Defendant

Daniel W. Craig
6642 Clayton Rd., #320
St. Louis, Missouri 63117
Tel:    (314) 297-8385
Fax:    (816) 709-1044
dan@donelonpc.com

/s/ Christopher J. Eby
Colin L. Barnacle
Christopher J. Eby
Nelson Mullins Riley & Scarborough LLP
1400 Wewatta Street, Suite 500
Denver, CO 80202
Telephone: 303.583.9900
Facsimile: 303.583.9999
colin.barnacle@nelsonmullins.com
chris.eby@nelsonmullins.com

15

16

4813-3632-2020 v.1